Good morning, Starns v. Obenland. For the appellant, Mr. Dempsey. For the appellee, Alex Parker. You may proceed. In this case, the trial court ran to summary judgment in favor of the defendant against the plaintiff and the plaintiff's plaintiff. In doing so, the trial court made certain credibility determinations about the plaintiff's testimony. The trial court chose to accept as true certain parts of the plaintiff's deposition testimony and chose to disregard other parts of the plaintiff's uncontradicted testimony about how the accident happened. The trial court also chose to disregard an amount of circumstantial evidence about how the accident happened and what caused Ms. Starns' injuries as well. In doing so, the trial court evaded the sole province of the jury to determine the credibility of witnesses and what the facts are in this case. Because of that, the trial court erred and ran to summary judgment in favor of the defendant against the plaintiff. How did the trial court determine credibility? The defendant rests her entire argument on basically one aspect of the plaintiff's testimony. As we all know from the briefs, this case involved a tractor-trailer accident in which my client, the plaintiff, was struck while she was a pedestrian. She was crossing a parking lot near Valley Road in Champaign. The tractor-trailer was stopped on the east side of Valley Road and was backing up at the time that my client was struck by the tractor-trailer. And so, the crux of the defendant's argument is that where the plaintiff testified in her deposition about where the tractor-trailer was positioned on the east side of Valley Road, because of that, there's simply no way this accident could have occurred. The trial court decided to accept as true that portion of the plaintiff's testimony, even though the plaintiff gave uncontradicted testimony that it was the defendant's tractor-trailer that struck her, that she was struck while she was crossing the parking lot. She was struck from behind. She turned over, grabbed a metal piece underneath the tractor-trailer, and was dragged across the parking lot on the west side of Valley Road. So the trial court decided to completely disregard that portion of the plaintiff's testimony and accept as true the portion of her testimony where she testified about where the tractor-trailer was positioned the last time she saw it, before she was struck. Again, that required a credibility determination by the trial court, which was wholly improper. That's something that's left up to the jury to decide. The trial court also chose to disregard a mountain of circumstantial evidence that that is how Ms. Starnes was injured in this case, as well. Specifically, the deposition testimony presented is in response to motion of summary judgment from Sandra Owenwood. That's the person who Ms. Starnes was going to the apartment complex to babysit for her trial on the day of the accident, October 15, 2015. Ms. Owenwood said she heard a scream coming from the parking lot. She goes outside and sees Ms. Starnes with injuries consistent with being dragged across the parking lot. She had scrapes and injuries to her back. She described Ms. Starnes as frantic, shaky, in shock. She had pressed scrapes and wounds on her back near her shoulder, all consistent, again, with being struck by the defendant's tractor-trailer. An ambulance is called. She's transported by ambulance from the scene to Carle Foundation Hospital, where she's examined by Dr. Swindell. At the emergency room, Dr. Swindell says she has cuts and abrasions. So that is all evidence the trial court chose to completely disregard. And I think the record is clear from what the trial court said during its ruling, is that without Ms. Starnes' testimony, and this is on page 50 of the record, her testimony as to how it happened, there is no, there isn't sufficient evidence on the causation. Well, the problem is, Ms. Starnes did testify about how the accident happened. The trial court has simply chosen to disregard that portion of her testimony and rely solely upon the testimony that she gave in which she said that tractor-trailer was parked on the far side of the parking lot on the east side of Dyer Road right before I was struck. I'm confused. Did the trial court say that the accident didn't happen, that she wasn't hit by the truck, that she wasn't drugged by the truck? I don't know if the trial court said that, but that's the defendant's position. The defendant's position is that she basically, I guess, faked the whole accident, that she wasn't injured. She wasn't injured in the manner claimed, and simply because the truck could not have been positioned in the location where she testified, that she saw before she was struck. Would you agree that a trial court is permitted, even in a summary judgment motion, to disregard testimony that is inherently improbable, self-contradictory, fanciful, delusional, or physically impossible? No, I would not agree with that. So you do not believe that that principle of law even exists? I don't believe that. If you look at, I mean, first off, if that was a principle of law, why was the defendant unable to cite a single Illinois case in which the trial court, at the summary judgment level, is able to simply disregard uncontradictory testimony? If you look at every single case that the defendants cite in their brief, which is the Maynard v. Norris case, the Eastman v. Mato case, the Bucktown Partners v. Johnson case, the Swinton v. Willamette Farm Revenue case, those are all post-trial motions where, at trial, a party gave uncontradicted testimony that was fanciful. It's not believable. And so the losing party goes and files a post-trial motion and says, look, my client gave uncontradicted testimony in this case. The trier of fact, whether it be the jury or, for instance, in the Department of Revenue cases, I heard an officer chosen to disregard that. And that's what Illinois law says on that subject, is the trier of fact can decide, even uncontradicted testimony that's inherently improbable, fanciful, delusional, flat-out lies, the trier of fact gets to decide whether or not that is credible. Not the court on the summary judgment. That's what every single one of those cases stands for that the defendant cited. And again, the lack of any supporting authority by the defendant in their brief to say that in Illinois law, the trial court can simply disregard uncontradicted testimony or decide what testimony is fanciful, what testimony is not credible, that's not consistent with what Illinois law is on the issue of summary judgment in such a case. And what the trial court does is make new law on this issue. That's not the trial court's job. And that's basically what the defendant is asking you to do in this case, is to overrule the long history of precedent to say that those kind of credibility determinations are not to be made by the court. They're to be made by the trier of fact. And in fact, the trial court admitted, the trial court couldn't find any case law that would support the proposition that the trial court can simply disregard Ms. Starnes' uncontradicted testimony, that that is how she was injured. They couldn't find anything. So there was no evidence even from the defendant that Ms. Starnes wasn't actually in that parking lot on October 15, 2015 when she was injured. She was actually in some other part of Champaign, or that she was hiding behind a building when this tractor was backing up, and she ran out of the parking lot, fell to the ground, and faked the scene. There was no other eyewitness testimony. And her testimony alone, saying the fenced tractor trailer was the one that hit me, that alone should have been sufficient to defeat the motion for serving a judgment. How that testimony did it, or she identifies the fenced tractor trailer as the tractor trailer that hit her, how that testimony gets evaluated in light of her testimony about where she last saw the tractor trailer before she walked into the parking lot and was struck, that's up to the tractor tracker to decide how to balance those seemingly contradictory pieces of evidence. So it very well could be that if you go and have a trial in front of a jury, the jury can decide, well, she was most likely mistaken about where that tractor trailer was the last time she saw it, because we know that eyewitness testimony is a lot of times inherently improbable or there's discrepancies. But that happens all the time in any kind of case that was tried before a jury or a trial in fact. The jury could very well decide, well, the tractor trailer probably was not where she says it was. But if you look at her testimony, we find her to be credible that this was the tractor trailer that hit her. We find it credible that Ms. Elliman came out of her apartment after she hears Ms. Storm scream and sees her having injuries consistent with being struck by the tractor trailer. We find it credible that she was transported by ambulance to the emergency room and the doctors diagnosed her with injuries consistent with being hit by the tractor trailer and dragged across the parking lot. That all that evidence outweighs the fact that maybe she was mistaken about where she last saw the tractor trailer before it began to back up. But again, that's something for the trier of fact. And if you look at the Olmos civil pattern jury instructions, those support the conclusion that those are all issues the trier of fact needs to decide. Specifically, IPI 4.03 says specifically that no instruction is supposed to be given relating to inherently improbable testimony. That's an issue for the trier of fact. If the law in Illinois was that the trier of fact can automatically or should automatically disregard any testimony that it finds to be not credible, there would be a jury instruction on that telling the jury that if you find Ms. Storm's testimony to be inherently improbable, fanciful, not credible, you should automatically disregard that. But all that gets factored into IPI's instruction 1.01, which tells the jury that they are the trier of fact. They're the only ones to decide what weight to give any credibility, what weight or what credibility to give to the testimony of any party, witness, or appointment in the case. And, again, it's very well could be that the jury finds in this case that the overwhelming circumstantial evidence, combined with Ms. Storm's direct testimony that it was the construction trailer that struck her, outweighs the jury's concern about where the construction trailer was the last time she saw it before it began to back up. So I think it's clear that the trial court made a credibility determination. The defendant tries in its brief to argue that, well, this really wasn't a credibility determination. But there can be no doubt that the trial court completely disregarded Ms. Storm's direct testimony that it was the defendant's construction trailer that hit her. They placed actually no weight, the trial court placed actually no weight whatsoever on that and chose to completely disregard that because that's exactly what Judge Baum said, is that, well, without her testimony, there's no proof of causation. Well, the problem is, that's what she said. The trial court doesn't have the right to simply disregard that portion of her testimony because the trial court does not like the fact that that's inconsistent with some other part of her testimony. And, again, the trial court wasn't able to find any other case file that allowed it to do what it did. So the trial court did cite the rawhide versus satellite air and land services case. In that case, it's clearly distinguishable from the facts you have in this case. In that case, you have a truck driver who was at a terminal and was dropping off a load and picking up another load, and the truck driver sustained a head injury. The truck driver didn't know how he sustained the head injury. He was unconscious. He doesn't know what happened. He doesn't know what hit him. And he argued in that case that there was circumstantial evidence that the freight terminal was responsible for his head injury. Well, that's clearly distinguishable from this case because we have direct testimony from Ms. Starnes about how she was injured. She knows she was injured by the defense tractor trailer as it was backing up and as she was driving across the parking lot. That doesn't fit with the defense narrative about the claim that Ms. Starnes made of this whole accident, that she really wasn't injured in this fashion. Again, they blacked solely on to her testimony where she talks about where the tractor trailer was positioned the last time she saw it. And the defendant claims it was physically impossible for the tractor trailer to back that distance in that sort of time frame and strike the defendant and the plaintiff and that her injuries were completely fabricated. She made this all up. Again, what weight to give to Ms. Starnes' testimony, what weight to give the argument made by the plaintiff, how to evaluate all that, that is something that has to be left solely up to the jury because they are the trier of fact in this case. Because of that, there were genuine issues of material fact in which the trial court then should not have granted summary judgment. Again, it's the defense position that Ms. Starnes made this injury, that she wasn't injured in the manner of the plaintiff. They can produce whatever evidence that they believe supports that conclusion, including Ms. Starnes' own testimony at the trial in front of the jury. And the jury will be the one who decides that issue. Again, that is not something that the trial court should be deciding on summary judgment. I think your instructions also make clear that whether or not someone's testimony is answerable, incredible, not believable, again, that threshold question is an issue that is decided by the trier of fact, not summary judgment where the trial court decides. How about the alternative argument on contributory negligence? Okay, that is clearly an issue of fact for the trial court to decide. So I don't think it's up to the jury to decide. It's not up to the trial court to decide that Ms. Starnes simply walking across a parking lot where she had a right to be, that her level of contributory negligence was greater than 50%. So your argument would be that it's always a factual question, never can be determined as a matter of law, if it's obvious. I think case law indicates that it very rarely should ever be considered as a matter of law an issue of contributory negligence. I don't believe this is the kind of case where the trial court can decide contributory negligence as a matter of law. Because from the truck driver's perspective, you have Ms. Starnes, who I don't know if that's in the record, but she's a very large woman. And so from the truck driver's perspective, there's only one of two options. Either he saw her walking across that parking lot, he failed to yield the right of way to her while he was driving his truck, as he was required to do by the vehicle code, and went ahead and struck her anyway. Or he didn't see her, although she should have been clearly visible, plainly visible, as she was walking across that parking lot. He didn't take the truck. I thought your point said she was right behind the truck and not visible to the driver of the truck. No, I think she was in the parking lot. So I think her testimony was she took one step into the parking lot and then she was hit. And the truck driver was backing his truck off of the parking lot into a grassy area or somewhere where his truck didn't belong, which again would have been negligence as well. But whether or not... So you're saying there is a fact question whether he saw her or should have seen her. Absolutely. I mean, I think if someone hits the truck, he yields the right of way to a pedestrian. And so whether or not he saw her, whether or not he should have seen her, even if he says, I never saw her, well, if someone is plainly visible and should be visible to an operator of a truck who has the duty to yield the right of way to a pedestrian, that can be considered negligence. Now, what degree of negligence a jury would attribute to Ms. Starnes versus the driver of the traffic trailer, again, I think that's uniquely a factual issue that has to be left up to the jury. I don't think there's any way a trial court or even if this court decided that that would be an alternate basis for sustaining the motion to disarm a judge. That's not something this court can decide as a matter of law that Ms. Starnes' contributory negligence was 51 percent or 56 percent or 60 percent versus Mr. Overton's negligence. Those are unique questions of fact that have to be left up to the charter of fact in this case and the jury. And that's not appropriate to decide those on self-adjustment or as an alternate basis for sustaining the trial court. Well, if you win and you go back and get a jury trial, what are you going to argue about how much at fault she was? I think she was zero percent at fault. I think that, again, I think that the vehicle code makes it clear that the driver of a vehicle backing up on a public street has a duty to yield the right of way. And it's, you know, especially when you're comparing a tractor trailer that has a substantial weight, the risk of potential injury to a pedestrian, I think the burden has to be on the truck driver to make sure that that truck driver yields the right of way versus a pedestrian. And, again, I mean, Ms. Starnes is a very, very large woman. So the extent that she's able to escape, even if she sees a truck driver or a truck coming right at her, the extent that she's able to get out of the way will be an issue of fact that the trial court has to decide as well. But, again, my argument to the jury would be that there's zero contributory negligence on the part of Ms. Starnes because all she was doing was trying to cross a parking lot. She looked and thought that the truck was sufficiently far away that she could make it across that parking lot in sufficient time to not be hit. The burden of making sure that she isn't hit should be placed on the driver of the tractor trailer who should have seen her, and he simply didn't. I think you're going to have to pick a pretty good jury on that zero percent negligence argument. I think that illustrates the point, though, that obviously there's a disagreement about what the level of contributory negligence should be. And your idea about the level of contributory negligence is obviously clearly different than mine. It's going to be clearly different than 12 individuals from Champaign County who have to get together and decide what the level of contributory negligence is. And it's not for this court or the trial court to decide that issue. Thank you, counsel. We'll hear from you on rebuttal. Thank you. May I please report, counsel, if I may? Of course. Before I respond to some of the arguments that were there, I just want to lay out a scenario to make sure we understand this. I know we've provided this before, so I'm not going to go into the length of detail here with the trial court. But what we have here in terms of testimony that's on the record is the plaintiff approached the scene from north, Kirby Avenue is up here, familiar with Champaign. She walked south on this side of Valley Road. At the point she got to this northern entrance here in the west parking lot, she says the truck that she claims ran over her. It pulled in to the eastern parking lot. The truck proceeded down all the way. She crossed over and was approximately right here. I'll show you another slide in just a moment. By that time, the truck had proceeded all the way to the far eastern end. Her testimony is explicit where it says she was at the far eastern end of this. The trailer was behind. This is now from the west parking lot looking toward the east. So it appears in the west parking lot looking this way. What we will see, if we go back in time, is the rear end of the truck. She claims that she was right here. These are her exits that she put in that position. She claims the truck began at the far end here. These are her exits. She claims she proceeded to walk in this direction, southwest. Her destination was an apartment in this building down here. The southwest corner. She claims that she took one step from this position and was run over by the truck. Now, you asked a very good question a moment ago about contributory names. I'm going to start with that first. Yes, it can be decided as a matter of law. The case law is very clear. Even the Moran case that is cited by my opponent does say that, well, it's usually a question of fact. Except, where the facts in the case are so palpably obvious that it's a question of law, it can become a question of law. In this case, the only way that she gets struck, based on her testimony, is if she puts herself back into the zone of danger. She had already passed through this entrance and was proceeding away from the scene. The only possible way, again, just to make clear this, her testimony is that she's here. That's this point right here. She's going here. The only possible way she puts herself back where this truck is alleged to have reversed and crossed here is if she puts herself back into the zone of danger. And I know that, Justices, you've examined cases before where it's been a question, where contributory names have been a question of law. And you have written previously that where the primary and proximate cause of the plaintiff's alleged injury is the plaintiff herself. Contributory negligence can be found as a matter of law. In this case, as I said, she stepped into the path of the vehicle. She admitted, the counsel cited that she went and saw Dr. Siegel after the alleged injury and after the alleged accident. She admitted to that doctor, and you, I think, pointed out a moment ago, didn't she say she walked right behind the trailer? Yes. She admitted that she walked behind the trailer and she knew the driver couldn't see her. Again, those are her words to the doctor after this alleged injury. So we have her away from where the accident is a claim to have occurred in this area here where she, her testimony is she was hit and dragged straight backwards to this point right there. So we have her putting herself back into the zone of danger behind the trailer knowing that the truck driver cannot see her. Your Honor, a fifth grader knows not to walk behind a tractor trailer when they are not in the zone of danger and put themselves back into that zone of danger when they know the truck driver cannot see them. This is a fully grown woman. Counsel, your opponent says, however, that the principle of law, that basically they argue you sold the trial court, doesn't even exist. That at a summary judgment motion, the trial court is not in a position to disregard testimony that is inherently improbable, self-contradictory, fanciful, delusional, or physically impossible. Yes, Your Honor. I heard that and I would say I disagree. Because he says all the cases you cite deal with actual fact-finders. The cases in Illinois that we could find dealt with either trial or something like that. Yes, we could not find one that said a summary judgment, but that does not mean that it could not occur. And we cited cases outside of the state of Illinois where we have found that on a summary judgment. That principle exists. Counsel wants to suggest that the principle doesn't exist where we cannot take something that someone has alleged is true but state that it has no evidentiary value. The thing is we do that all the time. For example, we don't allow someone to come in and testify, to assert the truth of the matter, come into court and say, hey, this person told me to prove the truth of the matter, assert it. Now, it's not that the court is saying, I don't believe you. I don't believe the credibility. It's saying, I'm sorry, we don't believe that that has sufficient weight in the court. We believe, and so therefore it has no evidentiary value. That's what this principle of law goes to, evidentiary value. Counsel has tried to corner this. The trial court made a credibility decision. In fact, if you look at the specific language of the trial court in the ruling, the trial court is saying, I'm not weighing credibility here. It didn't. The trial court didn't find that. Another example would be the Dignity Act. The trial court saying it didn't weigh credibility is not determinative. What's determinative is the record. Correct. So the trial judge said, I don't think I'm looking at credibility. I think I'm doing this, that, or the other. It's meaningless to us unless the record supports that. And what I think we can look at is moving from the contrived or negligence part of it, and that's what we're already now hearing in here in the improbable testimony part, is that another example would be the Dead Man's Act. Again, it's possible that someone could have told a deceased, a personal deceased, they were supposed to get a piece of property or a personal value. But we don't let them come in and testify to that. It's not that it's not true. It's that it does not have evidentiary value. And so in this case, That's because there's a bar against it. And similarly with hearsay, it's an evidentiary objection before a fact-finding. It's not an evidentiary objection based upon a deposition or before trial. I mean, you could file a motion eliminating saying, I don't think they should be permitted to testify to what happened to them because what they say happened to them just doesn't seem reasonable. That isn't going to work. Pre-trial or it may work when the hearsay comes up.  So I would suggest it's different. I know, and I think it is. I agree it is different. I'm saying that, I'm just giving examples in the law where someone came to saying, in those cases, while different, we found that it doesn't have evidentiary value. Those are recognized rules of evidence. I don't see that there's any similarity. Okay. And in this case, what we have, again, the courts, going back to the Supreme Court in the Mannon case and the first case in the Bucktown case, have recognized that there are narrow situations. And that's what we're talking about here. Counsel, I think, wants to suggest that I'm talking about the average run-of-the-mill personal injury case here. Well, we're not talking about that. We're talking about a very narrow case involving a claim by the plaintiff about facts that cannot possibly exist under the laws of physics or human experience. It's uncontradicted that the plaintiff has testified that the moment before she stood, she took one step from this point. The moment before that, the tractor-trailer is down the far end, parked right here. This distance is approximately 150 feet. There's evidence in the record that this is, we're talking about a semi-tractor-trailer, 15 to 19 tons, facing the opposite direction at a dead stop. And then she claims one second later, it's hitting her. That's, I'm sorry, under the rules of physics, that's impossible. Which sounds like terrific cross-examination, attacking the credibility of the witness. I think it would be terrific cross-examination, Your Honor. Or does that make it just legally impermissible as evidence? I'm not saying it's legally impermissible as evidence. Well, how else do you win? Well, because, Your Honor, the evidence that is used to support breach and the evidence that is used to support the proximate cause has no evidentiary value because it is so inherently improbably dispensable. But that's assuming that a fact-finder would believe that she can make a good estimate of distances. There are a lot of people that can't estimate distance, can't estimate the passage of time, can't follow directions, or they get turned around even though they're going to someplace that they're familiar with. And that would be within the common experience of jurors. We also know that she's large. Her estimate of one second off that step may not be the same as reality. It may have taken a little bit longer. We don't know if she would end up saying, I stepped out to walk on an even pavement rather than walking on grass. That's why I took that route. I was going to take that route. I wasn't going to cut across that grassy area or that tree area. I was using the pavement. And then I was going to turn left to go to that apartment, which is where you pointed out it was. I don't know those things. And I don't know whether the 150 feet is from the front of the cab or the back of the trailer. That's in the record, Warren. That's from the back of the trailer. The affidavit of the driver, he has testified as to the length of the truck. So he's 50 yards from her. The back of the truck is 50 yards from her. Yes, that's in the record. That's uncontradictory, Your Honor. Yes. That's what I'm saying. That's why it was so unbelievable. It's a loss of physics. If the front end of the cab is here, it puts the back end of the cab approximately at the end of these three cars here. Using, again, the length that is on this map. Five car widths of a parking lot are not 50 yards. Not even close to 50 yards. I'm talking about the back end is here and she's over here, Your Honor. You just moved the back end. The front end is here. The back end is approximately. How could she estimate from where she was that the front of the cab was all the way to the very bumper of that car on the right side of the parking lot? She didn't estimate, Your Honor. She testified explicitly, and I asked her. I said, was it all the way to the far end? She said, yes, it was all the way to the far eastern end. I explicitly asked her about that. These are her words, Your Honor, that the cab was all the way to the far end. As a fact finder, how do we know what she means by that? I guess as an extension to the question asked by Justice Connick, how do we know what she's going to say at trial? You may have really great cross-examination based on testimony that she's previously given, but how do we know that that's exactly what she's going to testify to at trial? We don't. Well, no doubt that if there was a trial, her testimony is going to be very different than it was in the deposition. And you're going to have some terrific cross-examination. And I'm going to have great cross-examination for her. But, again, in this case, and, Your Honor, you said, well, she's a large woman. Maybe it takes more time for her. I can address that because I explicitly pointed out that she said one step. In the deposition, she said one step. Now, again, she takes a second or two. One step is one step. There's no change in that testimony. So it's one step, not ten seconds, not two seconds. One step. So it's one step. Where is the truck going when it's backing up? What's going to be its end point? The truck, when it ultimately makes its turnaround, it's actually parked right here facing north on Valley Road. It pulled in here. Drove in straight. To make a reverse to then pull up. Then do that. To make a three-point turn. Okay. Now, Justice, to your point is, well, what's the testimony possibly going to be? I don't know. It could change. We can say that in any case that comes before a summary judgment or anything like this. But there's clear Illinois law that a party may not differ at the summary judgment level. You can't come in and start offering different testimony than what you've been opposed to. And in this case, I'll point out, at the deposition of the plaintiff, there was no examination by the plaintiff's counsel. As for any of these issues, it could have been cleaned up if there were questions that there weren't. There was no affidavit attempted to be put forth by the plaintiff in response to summary judgment saying, well, I'm sorry, my time was a little off. What I meant was, and counsel did even argue, tried to argue that, well, again, maybe she's not quite right. And what I would say to that is that, well, and counsel even alluded to it, that maybe the jury finds it not credible. Well, hold on a second here. That means that the plaintiff is asking the jury to fill in the blanks of breach and fill in the blanks of possible cause for her. That's not the jury's job. It's the plaintiff's job to provide the evidence to support that. He says, well, there's circumstantial evidence. Well, let's take a look at that. Hold on a second here. For there to be circumstantial evidence that actually supports a finding, the circumstances must be so related to each other that it is the only possible conclusion. Well, hold on. The circumstantial evidence is one. He alluded to this scream. But on examination of this felony, I asked her, I said, well, whose scream was it? She said, well, I don't, I didn't know. I wasn't sure. I said, well, when did it occur? Before or after the accident? Well, I don't know. How would she know whether it was before or after? I mean, that's what she heard. That's why I asked the question. I said, did you actually know it before or after? She said, I don't know. More importantly, the injuries that she says were, which turned out to be a rug burner or something like that, the injuries that she alleges, her own doctor, Dr. Murty, testified that they could have come from anywhere. They were not unique to a car accident or being allegedly burned alive by a truck. They could have come from anywhere. Again, that was her own doctor's testimony. I'm still wrestling with the legal principle that doesn't appear to exist, that at summary judgment, the trial judge is entitled to make these determinations, inherently improbable, self-contradictory, fanciful, delusional, or physically impossible. Well, Your Honor, as I mentioned to the trial court, if someone comes in with a truly fanciful story like this one, I don't believe that justice requires us to utilize the jury's time to hear that. So it would seem like then we would have a bunch of cases telling us that. Well, actually, that's why I think we don't, because, again, this is such a narrow line in case of the far end of the spectrum we have here. That's why it's so inherently improbable, because most people would not come in to a court and claim that a truck that was 150 feet away from them one moment after one step was on top of them the next moment. Or they've all gotten past summary judgment and they lose a trial. Or they lose a trial, yes. So it's possible that that could be the case. But, I mean, I'm not going to stand here and say that we found summary judgment cases. We didn't in Illinois. But I think you can also look to the other jurisdictions that found it. Now, again, that is part one of the argument as to why the trial court should be firm. But the second part is, as we talked about earlier, is the whole contributional negligence argument. And this court in Burkett and this court in Hardy have previously held where if somebody put themselves into a position of a danger, they were the proximate cause of the accident. And, therefore, as a matter of law, they were more than 50% responsible. The Hardy case is very instructive in the case where a young man claimed that he was going to cross an alley, look both ways over the vehicles, took one step into the alley, had his foot run over. The court says, you can't ignore what was obviously in there. And so, Your Honor, in this case, if her story is to be believed in terms of this contributional negligence argument, then she herself took that one step. As you said, Justice, if she didn't want to walk through the grass, okay, she can walk through the concrete. But counsel wants to suggest that the duty owed here is only a duty owed by the truck driver. Everyone also knows that the duty, everyone, the pedestrian has a duty of care for themselves. And she reached that duty clearly by walking one step into, apparently, the roadway surface, which she was out of, knowing the truck was there, knowing the driver couldn't see her, and was allegedly hit. So, again, Your Honor, for both reasons, that it's inherently a probable testimony, but also a contributory negligence as a matter of law above 50 percent, we believe that the trial court should be affirming in this case. Your Honor, if you have any more questions, I'm happy to ask. We do not. Thank you. Thank you. Rebuttal? Mr. Parker repeatedly says that Ms. Starnes intentionally placed herself in a position where she could be harmed by this truck. That's not in the record anywhere. There's nowhere in her deposition testimony does she say, I knew that truck was backing up, and I intentionally walked directly behind the truck where it was backing up. In fact, the record is quite clear that she did not see the truck backing up. She saw a truck that was stationed. Did she tell the doctor I stepped behind a truck that I knew couldn't see me? That's not what I think she says to the doctor she stepped behind the truck. I don't think the claim that she knew that this truck driver could not see her is not supported by any evidence in the record. Never in her deposition does she say, I knew that truck driver could not see me, and that would be pure speculation on her part that she's behind a truck and she knows what that truck or trailer driver can see. That's completely missing from the record. So to say that her contributory negligence is greater than 50% because she somehow knew that that truck driver could see her, and despite that, she knew that truck was backing up, knew that truck driver could see her or could not see her, and she walked in front of it, that would be some evidence of contributory negligence. That's not anywhere in the record. And she repeatedly said during her deposition that she thought it was safe to proceed once she saw the truck. So on page 94 of the common law record, for instance, she says, I saw him parked in his parking lot over there where he's stationary. She says, I am, quote, I am good, I can proceed. So she sees the truck that stopped, the stationary, and thinks it doesn't pose any risk of harm to her. That's when she then begins to walk. And she said that on page 95 of the common law record where she says, I turned around and saw the back of his truck, seen him parked in the middle section right there. I'm like, okay, he's good. He's not moving. I'm good. I can move. That's her direct testimony. Nothing in the record whatsoever suggests that she saw the truck backing up and she walked directly behind it. Nothing in the record suggests that she knew the truck driver couldn't see her whatsoever. Again, also, I think it's a stretch to say that somehow her own testimony supports the claim that the distance of how far away this tractor trailer was meant it was parked. In her thousand-year brief, page 6, she said the plaintiff reported to Dr. Swinville that she was walking in a parking lot behind a semi who was not aware that she was behind the semi. I think that doesn't indicate, I don't believe, that she intentionally walked behind a moving semi. I'm not saying intentionally. I didn't add the intentionally part. I'm just reading what you wrote. Plaintiff reported to Dr. Swinville that she was walking in a parking lot behind a semi who was not aware that she was behind the semi. I think that's what appears in the medical record, whether or not that's evidence that comes out. I think it's a statement that would come out at trial, but if she's asked at trial whether or not she knew the tractor trailer driver could not see her, I think that calls for pure speculation on her part. And, again, the claim that somehow the plaintiff was able to give definitive testimony about the exact distance of how far away the tractor trailer was parked in these parking lots is not supported by her testimony. Specifically on page 93 of the common law record, all she says was at line 13 that the tractor trailer was all the way at the end. And she says, yes, which this is a parking where people park their car. This is an actual parking garage. And she says he was all the way to the end and you saw the back of the trailer. And so she wasn't able to place any sort of specific yardage or feet or distance as far as how far away the tractor trailer was parked. That all came from the defendant. So, again, that's an issue of back to the jury to decide what Ms. Starnes meant by saying the front of the tractor trailer was parked all the way at the end of the parking lot versus the defendant's claim as to how far away he was parked. But, again, all this gets down to issues of credibility, issues of fact that have to be left up to the charter faculty, which, in this case, is the jury. And because of that, the trial court here in the ring can start a judgment and they ask you to reverse the trial court's decision. Thank you, counsel. We'll take this matter under advisement.